UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

Criminal No. 15-10145-RGS

                      UNITED STATES OF AMERICA

                                 v.

              DEMETRIUS WILLIAMS, a/k/a "Troll,"
                YANCEY WILLIAMS, a/k/a "Yung,"
                       TEVIN ABERCROMBIE,
                        ROBERTO ANDRADE,
                YANCEY CALHOUN, a/k/a "Pops,"
                        ANTHONY COPLIN,
                        BENJAMIN FIGUEROA,
              DERONN FUNCHES, a/k/a "Slim Dealz,"
                MICHAEL GAINES, a/k/a "Holiday,"
                         SHAROD HOPKINS,
                  LORENZO MYERS, a/k/a "Zo,"
            LOUIS WHITEHEAD, a/k/a "L" and "Little Man,"
        ARTHUR WILLIAMS, a/k/a "G," "G-Code," and "G-Source,"
                BRANDI WILLIAMS, a/k/a "Breezy," and
                    SEKOU WILLIAMS, a/k/a "Shoes"

                       **MEMORANDUM AND ORDER RE:**
              **GOVERNMENT'S MOTIONS FOR PROTECTIVE ORDER**
                **(DOCKET ENTRY ## 61, 82); MOTION TO COMPEL**
                 **AUTOMATIC DISCOVERY (DOCKET ENTRY # 103)**

                            **October 9, 2015**

**BOWLER, U.S.M.J.**

Pending before this court are two motions for a protective order filed by the government. (Docket Entry ## 61, 82). In the first motion (Docket Entry # 61), the government seeks a protective order barring distribution of discovery material, including automatic discovery material, to any defendant but allowing a defendant to review the material in the presence of a member "of the Defense Team"[1] or, subject to institutional rules,

---

[1] The first and second proposed protective orders define "Defense Team" as "attorneys of record, support staff,

at the institution housing the defendant.  (Docket Entry # 61-1). In the second motion (Docket Entry # 82), the government requests a protective order barring distribution of discovery material to individuals outside the Defense Team but allowing production to a defendant subject to the defendant's attorney watermarking the individual documents before providing them to the defendant.[2] (Docket Entry # 82-1).  The basis for the requested restrictions is to protect potential witnesses from intimidation and avoid retaliation directed at cooperating witnesses.

Defendants Deronn Funches, Demetrius Williams, Tevin Abercrombie, Louis Whitehead, Arthur Williams and Lorenzo Myers move to compel the government to produce all automatic discovery on compact disks or hard drives.  (Docket Entry # 103).  A number of defendants contend that the government fails to show good cause to justify the restrictions and that watermarking the individual documents is overly burdensome.

BACKGROUND

The Indictment charges the defendants with a conspiracy to distribute cocaine, cocaine base and heroin in violation of 21 U.S.C. § 846 and includes a criminal forfeiture count under 21

---

investigators and other individuals retained to participate in the defense."   (Docket Entry ## 61-1, 82-1).

[2]  As stated recently in the government's September 21, 2015 LR. 116.5 memorandum, "It is the government's position that the second protective order should be endorsed by the court as it was generated following input from both defense counsel at the Initial Status Conferences and the Court."  (Docket Entry # 118).

U.S.C. § 853.  It also charges defendant Tevin Abercrombie with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and sets out a forfeiture count against him pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

An affidavit filed by a Special Agent of the Federal Bureau of Investigation describes the defendants in this case and in four related cases[3] as leaders, members or associates of a street gang known as the Columbia Point Dawgs, a/k/a "the Point" (hereinafter "CPD").  (Docket Entry # 8-1).  The affidavit details CPD's organization of drug trafficking activities into separate street crews ("crews").  A number of the defendants in this case belong to a crew headed by defendants Demetrius and Yancey Williams ("the Williams crew").

In "[t]he 2010s[,]" CPD solidified its reputation as the largest and "most feared" street gang in Boston.  During this time period, it "engaged in violent shooting 'beefs'" with two other gangs, the Orchard Park Trailblazers ("OPT") and the Greenwood Street Posse ("GSP").  (Docket Entry # 8-1, ¶ 23).  In 2011, CPD's "[g]ang beef" with OPT escalated into a June 2011 kidnaping of a CPD member and a drive-by shooting the following day of an OPT gang leader and two innocent bystanders.  (Docket

---

[3] Criminal Numbers 15-10146-FDS, 15-10147-MLW, 15-10148-LTS and 15-10149-RWZ.

Entry # 8-1, ¶¶ 35-36).  Another OPT leader "was found shot in his car" during "the ensuing month."  (Docket Entry # 8-1, ¶ 37).  An October 2014 video "posted on YouTube" shows Tony Berry and Antonio Chatman ("Chatman"), two members of CPD and defendants in Criminal Number 15-10146-FDS, displaying "Boston Police Homicide Unit Reports and Suffolk County Grand Jury minutes identifying four Orchard Park gang members as cooperating witnesses in a homicide case."  (Docket Entry # 8-1, ¶ 38).  Tony Berry and another CPD member are shown offering to sell information about the witnesses and "attempting to incite retaliation by other street gangs against Orchard Park gang members."[4]  (Docket Entry # 8-1, ¶ 38).  Chatman is seen holding an assault rifle.

CPD's "beef" with members of GSP, a "Dorchester street gang," led to "numerous non-fatal shootings" in July 2014.  (Docket Entry # 8-1, ¶ 41).  "[I]nvestigators seized two guns and the wallet of Yancey Williams from a car associated with" him at the scene of an August 17, 2014 shootout between CPD, GSP and two other gangs in Chinatown.  (Docket Entry # 8-1, ¶¶ 39, 42).

In addition to the foregoing, the Special Agent's affidavit identifies defendant Deronn Funches, a CPD member, as a recipient

---

[4] There was testimony about the video at a detention hearing on July 8, 2015.  The government relies on this video as a basis for the proposed protective order.  It also represents that there is another video of Tony Berry displaying grand jury and police report materials identifying cooperating individuals. (Docket Entry # 61, p. 3).

of drugs from the Williams crew.  (Docket Entry # 8-1, ¶ 31) (Docket Entry # 79, pp. 28-29).  The affidavit does not depict defendant Deronn Funches as engaging in violence toward any individual.  (Docket Entry # 8-1) (Docket Entry # 79, p. 28).  It likewise references defendant Michael Gaines in a single paragraph as a recipient of drugs from the Williams crew.  (Docket Entry # 8-1, ¶ 31).  The Williams crew also supplied drugs to members of other gangs, including defendant Tevin Abercrombie, a member of the Mission Hill gang; defendant Roberto Andrade, a member of the Wilmington Street gang; and defendant Benjamin Figueroa, a member of the "Latin King gang."  (Docket Entry # 8-1, ¶ 31).

The Williams crew additionally supplied drugs to defendant Sharod Hopkins, a CPD member.  (Docket Entry # 8-1, ¶ 31).  A wiretap of defendant Demetrius Williams' telephone produced a telephone conversation between defendants Demetrius Williams and Sharod Hopkins involving the latter's gun being available for defendant Demetrius Williams at defendant Sharod Hopkins' house.  (Docket Entry # 8-1, ¶¶ 31, 46).

Defendant Louis Whitehead, along with defendants Demetrius and Yancey Williams, was a leader of CPD in "the 2000s."  (Docket Entry # 8-1, ¶ 20).  Defendant Louis Whitehead supplied the Williams crew with cocaine and, along with defendants Arthur Williams and Sekou Williams, expanded "CPD's drug trafficking

business into Fall River," Massachusetts. (Docket Entry # 8-1, ¶ 29). Defendant Yancey Calhoun oversaw a branch of CPD located in Portland, Maine. (Docket Entry # 8-1, ¶ 29). Defendant Anthony Coplin, a CPD member, used his business to distribute cocaine to the Williams crew, according to the affidavit. The Williams crew also used three "drug stash houses" in Boston. (Docket Entry # 8-1, ¶ 28). Defendant Brandi Williams, a CPD member, and defendant Lorenzo Myers, a member of a gang closely aligned with CPD, oversaw these stash houses. (Docket Entry # 8-1, ¶ 28).

Turning to the motions, the government moves for a blanket protective order extending protection to all discovery documents. (Docket Entry ## 61, 82). At this juncture, it refuses to provide automatic discovery material to defense counsel unless counsel has signed and/or agreed to the substance of one of the two proposed protective orders. During the September 22 and October 2, 2015 hearings, the government and/or defense counsel represented that various attorneys representing certain defendants had signed either the first or the second version of the proposed protective order with a reservation of rights or subject to certain terms with the government. In the second, most recent iteration, the proposed protective order requires defense counsel to access a "USAfx file share site" using "a 'PDF' format," download and watermark the pages of each document. (Docket Entry # 82). The government uses a USAfx platform and

explains that it "does not allow for individualized-watermarking for each account that has access to the global Discovery Materials in this case." (Docket Entry # 82). The government maintains that being able to track documents provided to a defendant through watermarking is necessary to protect against witness intimidation and retaliation. A number of defendants request that, to address the government's concerns, the government provide compact disks "with all .pdf files to be watermarked with [that defendant's] name." (Docket Entry ## 97, 100, 101) (Docket Entry # 103) ("the government may apply the appropriate electronic markings, though defendants do not agree in any way that restrictions on discovery are necessary").

The discovery material is voluminous and, to date, the government has produced "in excess of 8,500 documents and 40,000 media files" under the proposed protective orders. (Docket Entry # 118). The government describes the material as "photographs, audio/video recordings, Title III recordings and corresponding draft transcripts, laboratory analysis of controlled substance and firearm, and telephone records." (Docket Entry # 118).

Various defense counsel maintain that: (1) they lack the hardware or software necessary to perform the **individual** watermarking; (2) the restrictions impede their ability to efficiently and effectively represent their clients; (3) the restrictions lead to unnecessary and excessive expenditures of

Criminal Justice Act funds; (4) their clients did not engage in any witness intimidation in this case or in any past case; (5) their clients did not commit any violent acts and/or do not pose a risk of violent conduct; and (6) "the use of a 'drop-box' type server" (Docket Entry # 103) poses confidentiality concerns. Overall, various defendants contend that the government fails to show the requisite "good cause" under Fed.R.Crim.P. 16(d) ("Rule 16(d)") to support entering either version of the proposed protective order.

Defendants Deronn Funches, Demetrius Williams, Tevin Abercrombie, Louis Whitehead, Arthur Williams and Lorenzo Myers request that the government provide the automatic discovery material "on compact disks or hard drives in accordance with the existing practice of this District." (Docket Entry # 103). The foregoing defendants additionally request that the government provide two sets, one for counsel and one for each defendant to use in the facility in which the defendant is incarcerated prior to trial. (Docket Entry # 103). Defendant Michael Gaines points out that the Donald W. Wyatt Detention Facility ("Wyatt"), where he is housed, has a limited number of computers for the inmate population thus severely limiting his access to the material. (Docket Entry # 120). In a prior filing, defendants Demetrius and Arthur Williams suggest that "the Court issue an order allowing one copying company to make several copies of the

Government materials and provide at least one to every facility at which a defendant is housed" and several copies to Wyatt, which houses a number of the defendants.[5] (Docket Entry # 88). At present, "[t]he government anticipates sending hard drives with a complete set of the discovery produced on July 24, 2015 and September 21-22, 2015 to" the institutions housing the defendants. (Docket Entry # 118).

## DISCUSSION

Rule 16(d) governs protective orders regarding discovery material in criminal cases. Fed.R.Crim.P. 16(d)(1); see United States v. Lee, 374 F.3d 637, 652 (8th Cir. 2004); United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013) (Rule 16 contains a "provision governing protective orders related to the production of pretrial discovery"). The rule requires a showing of good cause. Fed.R.Crim.P. 16(d); see United States v. Bulger, 283 F.R.D. 46, 52 (D.Mass. 2012) (under Rule 16(d), "good cause provides the basis to enter a protective order").

Good cause ordinarily requires "a particularized, specific showing." United States v. Bulger, 283 F.R.D. at 52; see United States v. Wecht, 484 F.3d 194, 211 (3rd Cir. 2007) ("'[b]road allegations of harm, unsubstantiated by specific examples or

---

[5] The government's first proposed protective order requires the government to provide a copy of the discovery material to each institution and allows the defendants to review the material subject to the institution's rules and regulations. (Docket Entry # 61-1).

articulated reasoning, do not support a good cause showing'"); United States v. Carriles, 654 F.Supp.2d 557, 565 (W.D.Tex. 2009) ("motion for a protective order ordinarily 'contemplates a particular and specific demonstration of fact'"); see also Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986) (under Fed.R.Civ.P. 26(c), "finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements"). "The nature of the showing of particularity, however, depends upon the nature or type of protective order at issue." United States v. Bulger, 283 F.R.D. at 52 (citing *Manual for Complex Litigation (Fourth)* § 11.432 (2012)). Blanket or umbrella protective orders, such as the ones proposed by the government, by their nature are "'typically made without a particularized showing to support the claim for protection, but such showing must be made wherever a claim under an order is challenged.'" Id. at 53 (quoting *Manual for Complex Litigation (Fourth)* § 11.432 (2012), in parenthetical). Whereas blanket protective orders are "'useful and expeditious in large scale litigation,' . . . they can be overbroad and unnecessary." United States v. Smith, 985 F.Supp.2d at 545 (citations omitted). Moreover, in determining the appropriate level of protection, it is important to "ensure that a protective order 'is no broader than is necessary' to serve the intended purposes." Id.

  Here, the government's interest of protecting potential

witnesses from intimidation and retaliation is undeniably a valid concern.  See United States v. Bulger, 283 F.R.D. at 55-56.  Indeed, "the advisory committee notes to Rule 16(d) recognize the need to protect material when disclosure may impact the safety of a witness or lead to witness intimidation."  Id. at 55; Fed.R.Crim.P. 16(d), Advisory Committee Notes to the 1966 Amendments.

Relying on cases that implicate production of Jencks Act material,[6] however, the government's showing is relatively weak when balanced against the concerns raised by the defendants of having access to the withheld *automatic* discovery material to prepare for trial.  A defendant's mere receipt of drugs, as described in the affidavit, does not demonstrate a risk that the defendant will engage in witness intimidation.  Whereas the facts show that a number of the defendants have engaged in violent behavior, the government does not present a strong case that any defendant is likely to intimidate or retaliate against a prospective witness.  Moreover, the government makes no showing that the categories of the automatic discovery material produced to date (photographs, audio/video recordings, laboratory analyses

---

[6] United States v. Guerrero, 2010 WL 1506548, at *12-13 (S.D.N.Y. April 14, 2010); United States v. Scott, 2008 WL 4372814, at *1-2 (M.D.Pa. Sept. 19, 2008) (noting that, "Government witnesses have actually been assaulted for their cooperation with the Government in this case"); United States v. Garcia, 406 F.Supp.2d 304, 306 (S.D.N.Y. 2005).

and telephone records) implicate a viable risk of witness intimidation or retaliation.  The government's strongest showing relative to intimidation concerns the video of individuals who are charged in a related case.  The defendants in this case, however, are not in the video.

Redacting material that reveals the identities of potential witnesses not employed by the government or their expected testimony can adequately address the harm that the government presents.[7]  See United States v. Garcia, 406 F.Supp.2d at 307 (modifying government's proposed protective order "to relate only to such 3500 material as reveals the identities or expected testimony of witnesses not employed by the Government" and barring the defendants from possessing the material in jail "except when reviewing the material in the presence of defense counsel").  Balancing all of the concerns raised by the government and the defendants, the restrictions pertaining to individual watermarking are overly burdensome and, in addition to

---

[7] Defendant Deronn Funches notes that the government released "197 pages of Jencks material."  (Docket Entry # 71). To the extent Jencks Act material has been produced without restrictions, the government may seek an order preventing defendant(s) from possessing the material in their cells.  See United States v. Guerrero, 2010 WL 1506548, at *13 ("judges in this District . . . have issued protective orders precluding defendants from taking 3500 material that discusses CWs and civilian witnesses into prison").  Ordinarily, Jencks Act material is subject to production seven days before the trial date.  LR. 117(a); see Fed.R.Civ.P. 16(a)(2) (excluding Jencks Act material from Rule 16(a)(1)(A)-(D), (F)); 18 U.S.C. § 3500(a).

providing discs with files watermarked with a defendant's name, broader than necessary in light of the showing made by the government relative to witness intimidation and retaliation.

CONCLUSION

The government's motions for a protective order (Docket Entry ## 61, 82) are **DENIED**.  The motion to compel (Docket Entry # 103) is **ALLOWED** in part and **DENIED** in part.  The government shall produce the automatic discovery material, subject to redacting of Jencks Act material and/or any other material that might reveal the identities of a prospective government witness, on compact disks and provide two sets to the attorney for each defendant.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge